IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC SCHNEIDER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 2:21-CV-1725-DAD-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　　Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' briefs on the merits, ECF Nos. 13 and 15.

　　　　　The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the Commissioner's final decision be affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

|   |   |   |
|---|---|---|
| 1 | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on November 29, 2018. See CAR 20.[1] In the application, plaintiff claims disability began on December 1, 2012. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on August 13, 2020, before Administrative Law Judge (ALJ) Arthur Zeidman. In an October 28, 2020, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): primary headache disorder, including migraine headaches and tension headaches; and degenerative joint disease of the cervical spine;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the full range of light work; the claimant can only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; the claimant could occasionally balance, stoop, kneel, crouch, and crawl; the claimant could never work at unprotected heights or around moving mechanical parts;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work as a construction estimator.

See id. at 22-34.

After the Appeals Council declined review on August 2, 2021, this appeal followed.

///
///
///
///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on April 1, 2022, ECF No. 9.

## III.  DISCUSSION

In his opening brief, Plaintiff argues remand is necessary because the ALJ failed to include in Plaintiff's residual functional capacity those mental and physical limitations found credible or explain why they were being rejected.  Plaintiff also contends that the ALJ and Appeals Council lacked constitutional authority, rendering the entire administrative decision invalid.

### A. Residual Functional Capacity Assessment

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[2]  An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

At Step 4, the ALJ determined Plaintiff's residual functional capacity and found that Plaintiff can perform the full range of light work with some physical limitations.  See CAR 27-32.  The ALJ did not provide for any mental limitations.  See id.  In doing so, the ALJ considered Plaintiff's statements and testimony concerning the limiting effects of his various impairments.  See id. at 27-32.  Overall, the ALJ gave Plaintiff's statements and testimony little weight, finding that the objective record as well as Plaintiff's activities of daily living were consistent with the conclusion that Plaintiff remains capable of light work.  See id.  The ALJ also

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

considered medical opinions from agency consultative doctors, Roberta Herman, M.D., and Jeanie Kwun, M.D., who found Plaintiff has the physical capacity for light work, and whose opinions the ALJ accepted. See id. at 32. Plaintiff does not in this appeal challenge the ALJ's findings with respect to his statements and testimony or the medical opinion evidence.

Plaintiff contends the ALJ's residual functional capacity assessment is flawed because it fails to account for mental and physical limitations the ALJ found were supported by the record. ECF No. 13, pgs. 5-15.

1.  Mental Limitations

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure, the Psychiatric Review Technique (PRT). See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In doing so the ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

Citing the ALJ's discussion of the severity of mental impairments at Step 2 of the sequential analysis, Plaintiff correctly notes: "In this case, the ALJ completed the PRT analysis and found that Mr. Schneider had mild limitations in two of the four areas of mental functioning, i.e., interacting with others and concentrating, persisting, or maintaining pace (Tr. 25-26)." ECF No. 13, pg. 5.

As to these areas of mental functioning, the ALJ stated:

> The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant testified that his inability to work and other health problems exacerbated his depression and anxiety (Hearing Testimony). The claimant estimated that he began suffering from depression and anxiety during 2015 (Hearing Testimony). These conditions worsened during his divorce (13F/100, 108). The claimant was often positive for depression, anxiety, and a sad mood (E.g., 3F/4; 4F/37; 12F/28, 57, 79). He also endorsed fearful and anxious thoughts (12F/63). The claimant was positive for some self-isolating behavior (12F/63). In addition, he experienced mood swings and irritability with medication when attempting to quit smoking (12F/37). Despite this, the claimant was

> regularly cooperative, calm, and pleasant (E.g., 2F/2; 4F/7; 11F/38; 12F/57; 17F/32; 18F/3; 20F/2). He also maintained an appropriate mood and affect during appointments (E.g., 2F/3; 4F/7, 13, 42; 7F/29; 11F/4; 12F/9, 77; 15F/43; 16F/13).
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant described disrupted sleep patterns (E.g., Hearing Testimony; 3F/4; 12F/15; 13F/103). The claimant described that he had trouble sleeping due to pain, numbness in his arms and hands, and anxiety (Hearing Testimony; 12F/97). Throughout the record, he was noted to have insomnia (E.g., 4F/79; 12F/28). The claimant also noted that he had reduced energy levels, fatigue, and low physical activity (E.g., 9F/1; 10F/11; 12F/85; 13F/109). Moreover, due to his anxiety, he had a hard time relaxing and resting (Hearing Testimony). In addition, little things would add up and he could feel overwhelmed (12F/63). Despite this, he was regularly alert and oriented (E.g., 2F/2; 3F/7; 4F/42; 7F/49; 9F/2; 11F/38; 12F/9; 17F/50). The claimant also had some limits in his attention and concentration secondary to pain (4F/80). Overall, however, he maintained good attention and concentration (E.g., 4F/42; 12F/57, 79; 17F/32). Additionally, he could perform household chores, help prepare meals, read, and umpire baseball games, which require at least some concentration and persistence (Hearing Testimony).

CAR 26.

Though the ALJ found Plaintiff has mild limitations in two functional areas under the PRT, the ALJ concluded, again at Step 2, that Plaintiff's mental impairment overall was non-severe. See CAR 26. Specifically, the ALJ found:

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

CAR 26.

The ALJ added:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

CAR 26-27.

///

7

Based on the ALJ's findings at Step 2, Plaintiff argues the ALJ erred at Step 4 by failing to account for any mental limitations in Plaintiff's residual functional capacity. According to Plaintiff:

> In this case, the ALJ completed the PRT analysis and found that Mr. Schneider had mild limitations in two of the four areas of mental functioning, i.e., interacting with others and concentrating, persisting, or maintaining pace (Tr. 25-26). That fact is beyond any possible dispute. In other words, the Agency is absolutely bound by the ALJ's own findings.
>
> * * *
>
> It is further beyond dispute that mental limitations found credible at steps two or three are functional limitations that must be considered in assessing the claimant's RFC. In fact, 20 C.F.R. §§ 404.1520a, 416.920a use the term "functional limitation" **eleven times** in discussing the ratings contained within the PRT and what they mean. A PRT finding of mild limitations in interacting with others; and in concentrating, persisting, and maintaining pace means that mental "functional limitation[s]" are present as a matter of law under the regulations. 20 C.F.R. §§ 404.1520a, 416.920a. The statute does not empower counsel for SSA to rewrite SSA's regulations merely to improve SSA's litigation position.
> The issue in this case is not whether Mr. Schneider had mental functional limitations but whether the ALJ either adopted or explained why he was not adopting the mental functional limitations he already found credible in his RFC. The ALJ himself stated "the mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment" of the claimant's mental functioning (Tr. 26). Yet, this is precisely what is lacking from the ALJ's decision. Because the ALJ never completed the "more detailed assessment" of Mr. Schneider's mild mental limitations and how they would impact his ability to perform work, remand is required. Thomas, 278 F.3d at 956.
> The ALJ adopted absolutely no mental limitations in his RFC or hypothetical questions to the vocational expert (Tr. 27, 75-76). Limitations the ALJ finds credible at steps two or three cannot simply disappear at steps four or five; all limitations found credible by the ALJ must be incorporated into the RFC in some form or the ALJ must explain why such credible limitations were not accommodated. Remand is required for further evaluation of Mr. Schneider's mental impairments and their impact on his ability to work.

ECF No. 13, pgs. 5-7 (emphasis in original).

As Plaintiff acknowledges, the ALJ completed the psychiatric review technique (PRT) analysis required under the regulations at Step 2. The ALJ concluded that Plaintiff has mild limitations in each of the four areas. Based on the PRT findings as well as evidence indicating no more than minimal impact on Plaintiff's ability to work due to mental limitations, the ALJ correctly concluded at Step 2 that Plaintiff's mental impairments are not-severe.

Notably, Plaintiff does not challenge this finding. Instead, Plaintiff argues that the ALJ was required to account for mild mental limitations at Step 4 in formulating Plaintiff's residual functional capacity, or explain why she was not doing so.

The Court does not agree. See Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022). In Woods, the Ninth Circuit upheld the ALJ's determination that the plaintiff had non-severe mental impairments based on application of the PRT at Step 2 revealing only mild limitations. The ALJ in Woods, as here, included no mental limitations in determining the plaintiff's residual functional capacity at Step 4. Ultimately, the appellate court affirmed the ALJ's denial of benefits. The current case presents the same situation.

With respect to mental limitations, the regulations provide additional guidance. Under 20 C.F.R. § 404.1520a(d), the claimant's mental residual functional capacity is only assessed in light of mental impairments found to be severe. Specially, the rule provides: "If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."[3] Here, as in Woods, the ALJ did not err by failing to discuss at Step 4 limitations related to mental impairments found non-severe at Step 2.

### 2. Physical Limitations

Plaintiff argues the ALJ erred by failing to include in the residual functional capacity finding any limitations regarding triggers, need for breaks, and impaired vision related to his headache impairment. See ECF No. 13, pgs. 11-13. Plaintiff also contends the ALJ erred by not including in the residual functional capacity assessment limitations in neck movement and reaching attributable to Plaintiff's degenerative joint disease (DJD), which the ALJ found to be a severe impairment. See id. at 13-15.

/ / /

/ / /

/ / /

---

[3] Plaintiff does not raise any argument related to the ALJ's analysis of the Listings of Impairments at Step 2.

9

As to both headaches and degenerative joint disease, Plaintiff argues:

> The ALJ failed to accommodate not only Mr. Schneider's admittedly severe headaches, but his admittedly severe cervical impairment, as well. The RFC does not contain limitations regarding neck movement or reaching which would result from severe DJD of the cervical spine (Tr. 27). The ALJ stated that Mr. Schneider had pain and reduced range of motion in his cervical spine which meant that he could only occasionally perform postural movements (Tr. 32). The medical evidence of record showed consistent complaints and findings of neck pain, tenderness, and decreased range of motion (Tr. 740, 308, 309, 468, 489, 500-01, 503, 585, 593, 601, 609-12, 622, 659, 673, 690, 711, 740). The ALJ himself stated that neck pain was "regularly complained of" (Tr. 30). MRI results showed a 1-2mm disc protrusion at C3-4 and C4-5 levels with facet hypertrophy and neuroforaminal stenosis (Tr. 331). The ALJ noted the same MRI findings in his denial (Tr. 29). The ALJ found the opinions of the DDS consultants to be persuasive because the opinions were consistent with the medical evidence of record and stated that Mr. Schneider had reduced range of motion of his cervical spine with radiating pain (Tr. 32). He also stated that Mr. Schneider would be limited to only occasionally performing postural movements (Tr. 32). Due to his severe cervical impairment, with consistent documented neck pain, tenderness, and decreased range of motion, Mr. Schneider would have been limited in his ability to reach. However, the ALJ failed to include in his RFC any limitations with regard to neck movement or reaching – both of which would result from a severe cervical impairment (Tr. 27). He limited Mr. Schneider to only occasionally performing postural movements but failed to include additional, supported limitations with regard to reaching in his RFC (Tr. 32). Therefore, because the ALJ failed to include the additional, supported limitations with regard to reaching in his RFC, remand for reconsideration is required.
>
> The above points alone show why this ALJ decision cannot be affirmed. Let it be clear that the Agency's attorneys have no statutory authority whatsoever to alter the ALJ's findings. The ALJ himself found that Mr. Schneider had the severe impairments of primary headache disorder and DJD of the cervical spine (Tr. 23). As a matter of law, this means primary headache disorder and DJD of the cervical spine, significantly limited Mr. Schneider's ability to perform basic work activities. Yet the ALJ's RFC finding indisputably failed to contain any limitations regarding the same (Tr. 27). The ALJ failed to explain how Mr. Schneider could suffer from severe primary headache disorder and DJD of the cervical spine and yet not have any limitations in his ability to perform related work activities.
>
> The medical evidence of record supports the ALJ's own finding that Mr. Schneider's primary headache disorder and DJD of the cervical spine were severe. In February of 2013, Navdeep Loomba, M.D., examined Mr. Schneider and found that he had constant, aching pain due to migraine headaches (Tr. 335). Dr. Loomba noted that the pain was aggravated by light, noise, and lack of sleep (Tr. 335). Later, at appointments in June, July, August, and September 2018, Vladimir Rafanov, M.D., examined Mr. Schneider and found that he had pain due to headaches (Tr. 700-12). Dr. Rafanov noted that the pain was exacerbated by bright lights and that Mr. Schneider had associated symptoms of blurred vision, dizziness, nausea, neck stiffness, and photophobia (Tr. 700, 703, 706, 709). Also in 2013, Mr. Schneider had an MRI of his cervical

> spine which Dr. Loomba reviewed and found it showed disc protraction at C3-C4 and C4-C5, with left neural foraminal stenosis and facet hypertrophy (Tr. 331). In November of 2013 Mr. Schneider was again seen for neck pain, this time by Rodomelle Mungcal, M.D., (Tr. 468-69). In a 2019 cervical spine CT scan, Mr. Schneider was positive for anterior wedging of T2 on T3 and mild multilevel degenerative disc disease, including multilevel facet arthropathy and uncovertebral spurring (Tr. 1333-34). Because Mr. Schneider had the severe impairments of primary headache disorder and DJD of the cervical spine, his ability to perform work activities would have been limited. His severe impairment of primary headache disorder limited his ability to maintain consistent attendance at a given occupation due to the need for treatment and recovery, and symptoms (Tr. 87, 309, 335, 378, 380, 383, 410, 418, 442-43, 700, 703, 706, 709-10, 750, 758-59, 764, 766, 771, 810, 819, 845, 910, 912, 914, 916, 921). His severe impairment of DJD of the cervical spine limited his range of motion which would in turn limit his ability to reach (Tr. 740, 308, 309, 468, 489, 500-01, 503, 585, 593, 601, 609-12, 622, 659, 673, 690, 711, 740). Thus, Mr. Schneider's severe impairments of primary headache disorder and DJD of the cervical spine limited his ability to perform work activities and remand for reconsideration is required.
>
> Mr. Schneider's mental and physical capacities were critical issues in this case. The ALJ erred in failing to either adopt limitations related to Mr. Schneider's admittedly severe primary headache disorder and DJD of the cervical spine, or to explain why no such limitations were supported in formulating the RFC. Because the ALJ failed to explain the basis for his failure to include potentially work-preclusive limitations in his RFC despite finding the exact same limitations credible, remand for further proceedings is required. See SSR 82-62, 1982 WL 31386 ("The rationale for a disability determination must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a specific conclusion."); see also SSR 83-14, 1983 WL 31254 ("There must be findings of fact and recitation of evidence which supports each finding.").

ECF No. 13, pgs. 13-15.

Having considered Plaintiff's argument and recited it here, the Court observes that much of Plaintiff's discussion focuses on evidence establishing that headaches and DJD are severe impairments – an issue which is not in dispute. Because Plaintiff makes no challenge to the ALJ's severity determination at Step 2, Plaintiff's argument largely misses the point that the residual functional capacity determination at Step 4 involves a determination of the extent of functional limitation caused by these impairments. The hearing decision reflects that the ALJ did precisely that with respect to headaches and DJD.

///

///

11

Regarding these impairments, at Step 4 the ALJ imposed the following limitations to Plaintiff's residual functional capacity:

> To avoid exacerbating the claimant's headaches and neck pain, both of which could be triggered by physical activity, the claimant would be limited to light exertional work. In addition, he had increased pain with turning his neck in certain directions and intermittent limited ranges of motion, so he could only occasionally perform postural movements including crawling. Due to the claimant's migraines and pain, he should never work at unprotected heights. To avoid triggering his migraines, in part due to noise, the claimant should avoid working around moving mechanical parts.

CAR 31.

The kernel of Plaintiff's argument is that the ALJ erred by not considering and accounting for functional limitations related to headaches and DJD at Step 4. The hearing decision shows otherwise.

### B. **Validity of Administrative Process**

According to Plaintiff, remand is required because the ALJ and Appeals Council judges had no legal authority to adjudicate this case because they were not properly appointed. See ECF No. 13, pg. 15. Plaintiff argues that the assigned ALJ and members of the Appeals Council were not properly appointed because the then Acting Commissioner for the Social Security Administration, Ms. Berryhill, appointed these officials past the 210 days permissible under the Federal Vacancies Reform Act (FVRA).[4]

Assuming a FVRA defect regarding the agency officials in this case, Plaintiff's argument is not persuasive. As the court recognized in Avalon v. Kijakazi, "[t]he overwhelming weight of authority addressing this issue recognizes that the FVRA contains a spring-back provision that made Acting Commissioner Berryhill's appointment valid at the time she appointed the ALJs and Appeals Council Judges." 2022 WL 1746976, at *20-21 (D. Nev. May 27, 2022) (citing various district court decisions); see also Thomas S. v. Comm'r of Soc. Sec., 2022 WL 268844 (W.D. Wash. Jan. 28, 2022).

---

[4] Defendant addresses an additional argument – whether the Acting Commissioner's appointment violated separation of powers principles. This issue, however, is not raised in Plaintiff's opening brief and, as such, is not discussed here.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment, ECF No. 13, be denied;

2. Defendant's cross-motion for summary judgment, ECF No. 15, be granted; and

3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 13, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE